## Case No. 17,810.

WILSON et al. v. IZARD et al.

[1 Paine, 68.] [1]

Circuit Court, D. New York. April Term, 1815.

ARMY — ALIEN ENEMIES AS VOLUNTEERS — DISCHARGE — VOLUNTEERS TO SERVE AT PARTICULAR POST — POWERS OF PRESIDENT.

1. Alien enemies who had enrolled themselves as volunteers, and been accepted by the president, under the act of the 6th of February, 1812 [2 Stat. 676], not entitled to be discharged; there being no law enjoining the president from accepting them.

[Cited in Re McDonald, Case No. 8,751.]

2. It seems that the president had a right to accept volunteers, to serve at a particular post as well as for general service, the act being silent on the subject. At any rate he had a discretion in the premises, not to be controlled by a court of justice.

3. The insertion in their enrolment of the officer's name under whom the volunteers were to serve, was meant merely to ascertain the post where they were to serve by designating its commander, and not to attach them to his personal command, so that he could not be changed.

W. Sampson and J. Anthon, for plaintiffs.
N. Sanford, for defendants.

LIVINGSTON, Circuit Justice. By the return made to the habeas corpus issued in this case it appears, "that the complainants had enrolled themselves as privates in a corps of volunteers, under the command of Lieutenant Colonel Denniston; that as such their services have been accepted by the president of the United States, agreeable to the act authorizing him to accept and organize certain volunteer military corps, passed the 6th of February, 1812, and an act supplementary thereto, passed the 6th of July in the same year; and that the parties are now doing duty as private soldiers in the city and harbour of New-York,

1 [Reported by Elijah Paine, Jr., Esq.]

as stipulated in the original instrument by which they enrolled themselves." On referring to this instrument of enrolment, which is annexed to and made part of the return, it appears that the complainants, among others, did thereby "volunteer and offer their services to the United States, pursuant to the act of congress of the 6th of February, 1812 (4 Bior. &. D. Laws, 374 [2 Stat. 676]), to serve under the command of Brigadier General Armstrong, for the sole purpose of defending the city and harbour of New-York, for one year only." This roll was signed by one of the complainants as an artificer. It is not stated in the return that the parties have received pay as privates, nor that they have taken the oath prescribed by the 18th section of the act "to raise an additional military force," "to observe and obey the orders of the president of the United States, and the orders of the officers appointed over them, according to the rules and articles of war." But, as it is averred in the return that the president has accepted them, and that they are in actual service, it is fairly to be presumed, until the contrary be made to appear, that they receive pay, and have taken the oath just recited.

On this state of facts, it has been contended that these volunteers are entitled to their discharge.

First. Because they are alien enemies, which is a fact not appearing on the return, but sworn to at the time of the allowance of the habeas corpus. This objection is at once disposed of by saying, that the president is not enjoined by any law, either from enlisting alien enemies in the armies which have been ordered to be raised during the present war, or from accepting of the voluntary services of persons of that description. Whether British subjects may not thus commit themselves with their natural sovereign, or whether it be good policy to employ them, are questions of legislative, not of judicial consideration.

A second ground of relief is, that the president is not authorized to accept of volunteer corps for the defence of a particular place, but only for general purposes; so that they may be ordered, in case of necessity, to any part of the United States.

On this point the act in question is silent, and as far as the power delegated by it to the president may be misused, it is unimportant which construction prevails; for in either case there will be a latitude of discretion, as must ever exist in such cases, which will afford ample scope for very serious abuses. As commander in chief of the army, it does not appear to have been reposing too much confidence in the president to leave it to him to accept of these volunteer corps, either for the defence of particular forts or cities, which must be garrisoned throughout the war, or for the general defence of the Union. For the first of these purposes it would be more easy to obtain volunteers, and when obtained they

would feel better reconciled to the service, and in general be more useful and zealous in the defence of their own firesides, than they would be if marched to a great distance from home, and employed to defend remote parts of the United States. But this court does not think it necessary to express any opinion whether the president has a right or not to accept of volunteers for the defence of a particular city or harbour, because under the powers vested in him by this act, he has a discretion in the premises, in the exercise of which he cannot and ought not be controlled by any court of justice. If he abuses this discretion, he must be amenable for his acts, if at all, in some other way. But however the public interests may be affected by accepting of soldiers for the discharge of a particular duty, it does not lie in the mouth of the men who have thus made a good bargain with the president, to allege as a reason for their not being bound, that he had exceeded his powers. So long as they receive pay, and are employed agreeably to their offer, this court feels disposed to consider them as regularly in service under the act in question, and can perceive no cause whatever of complaint on their part. It might be added that, for aught that appears, the president may have accepted of them for general purposes. If so, it will not be denied that he has a right to use them for the defence of the harbour of New-York, and that so long as they are thus employed, they are doing duty within the terms of the offer which they made of their services.

Another complaint is, that Wilson, one of the parties in the instrument of enrolment which is produced, has engaged as an artificer; whereas by the return it appears that he is doing duty as a private soldier, as stipulated in the original instrument of enrolment. The court is not prepared to say that this return furnishes any evidence of the employment of this man contrary to the offer which he made of himself. A company of artificers may, for aught that appears, be called a company of soldiers, and may be compelled, for any thing that appears to the court, to do duty as such. This man has certainly sworn, as well as the others, that he will faithfully serve against the "enemies of the United States," and it is presumed that, in day of battle he might, although he be called an artificer, be compelled to fight against the enemy. Again, it is said these men engaged to serve under Brigadier General Armstrong, and are now placed under another officer. This gentleman having, at the time of this enrolment, the command of the city and harbour of New-York, his name must have been inserted for no other purpose than for designating the extent of the duty to which they obliged themselves; or, as is more probable, merely for the purpose of stating who was the then commander in chief over the city and harbour. It never could have been supposed that it imposed any obligation on the government to continue General Arm-

strong in this command; or that, in case of his death or employment elsewhere, they were exonerated from any further service, and that all subsequent detention would be unlawful. But if this be no satisfactory answer, one completely so will be furnished by the oath which these men have taken, which must have been subsequent to their enrolment, and to the president's acceptance. By that oath they oblige themselves to "obey the orders of whatever officers are appointed over them." If they had any claim before to an exclusive service under General Armstrong, by this oath they surrendered that privilege, and became bound to continue in service, under such other officer or officers as might be appointed to command them.

It is the opinion of the court that the parties be remanded.